UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-cr-20235-KMM(s)
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

HYUNJIN LERNER,

      Defendant.

_____/



FILED BY TB
Oct 11, 2017
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

## SUPERSEDING INFORMATION

The Acting United States Attorney charges that:

### GENERAL ALLEGATIONS

### The Defendant and Relevant Entities

1. Bankrate, Inc. ("Bankrate") was a marketing and financial publishing company. Bankrate aggregated and published information related to various consumer financial products, including mortgages, credit cards, insurance, and automobile loans.

2. Bankrate owned and operated a number of websites that allowed potential customers to compare and shop for different financial products. When a potential customer used one of Bankrate's websites and showed interest in a particular financial product, Bankrate passed the customer's information along to the bank or financial services company that was offering the product. In exchange for providing information about the potential customer to the company offering the financial product, Bankrate received a payment from the company. Bankrate called the information it sold about the potential customer a "lead." Bankrate sold mortgage leads to

banks and mortgage originators; insurance leads to regional and national insurance companies; and credit card leads to various credit card originators.

3. Bankrate also generated revenue by selling financial information, such as average mortgage rates, directly to newspapers or other publishers, and through advertising on its websites.

4. Bankrate's principal offices were in North Palm Beach, Florida. Bankrate also maintained offices in New York, New York, Denver, Colorado, and Austin, Texas. Bankrate employed approximately 450 people who worked in three primary divisions: (1) "Bankrate Core," a mortgage information business; (2) "Bankrate Insurance," an insurance information business; and (3) "Bankrate Credit Cards," a credit card information business. Bankrate's offices in Florida focused on the mortgage information business.

5. Starting in or around June 2011, Bankrate's stock was traded publicly on NYSE, a national securities exchange, and was registered with the United States Securities and Exchange Commission ("SEC"), an agency of the United States, pursuant to Section 12(b) of the Securities Exchange Act of 1934.

6. From in or around September 2006 to in or around September 2014, the defendant **HYUNJIN LERNER** served as Bankrate's Vice President of Finance. As Vice President of Finance, **LERNER** reported directly to Bankrate's Chief Financial Officer ("CFO"), and supervised other employees in the finance department. **LERNER** was also a certified public accountant ("CPA").

7. From in or around 2011 and continuing through 2014, a known public accounting firm ("Accounting Firm A") with offices in Miami, Ft. Lauderdale, and elsewhere, acted as the independent auditor of Bankrate's financial statements.

2

**Conspiracy to Make False Statements to a Public Company's Accountants, to Falsify a Public Company's Books and Records, and to Commit Securities Fraud**
**(18 U.S.C. § 371)**

From in or around at least 2011, through in or around at least September 2014, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**HYUNJIN LERNER,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with other individuals known and unknown to the Acting United States Attorney, to commit certain offenses against the United States, namely:

    a.    to knowingly and willfully, directly or indirectly: (a) make and cause to be made materially false or misleading statements to Accounting Firm A, and omit to state, or cause another person to omit to state, any material fact to Accounting Firm A necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading; and (b) take action to coerce, manipulate, mislead, and fraudulently influence Accounting Firm A knowing that such action, if successful, could result in rendering Bankrate's financial statements materially misleading, in connection with Accounting Firm A's review of Bankrate's financial statements and preparation of Bankrate's quarterly and annual reports required to be filed with the SEC, in violation of Title 15, United States Code, Section 78ff, and Title 17, Code of Federal Regulations, Sections 240.13b2-2(a) and 240.13b2-2(b);

    b.    to knowingly and willfully falsify, and cause to be falsified, books, records, and accounts required to, in reasonable detail, accurately and fairly reflect the transactions and dispositions of Bankrate, in violation of Title 15, United States Code, Sections 78m(b)(2) and 78m(b)(5), and 78ff; and;

c.   to knowingly and willfully execute a scheme and artifice (a) to defraud any person in connection with any security of Bankrate, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by statements containing material omissions, any money and property in connection with the purchase and sale of any security of Bankrate, an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), to wit, **LERNER** and others made, and caused to be made, false and misleading representations to Bankrate's shareholders and members of the investing public about Bankrate's true financial condition.

## Purpose of the Conspiracy

8.   The purpose of the conspiracy was for **LERNER** and his co-conspirators to mislead Bankrate's shareholders, regulators, independent auditors, and the investing public in order to: (a) maintain and increase the market price of Bankrate's stock; and (b) unjustly enrich **LERNER** and his co-conspirators through the continued receipt of compensation, stock and other benefits.

## Manner and Means of the Conspiracy

### Overview of the Conspiracy

9.   From in or around at least 2011, through in or around at least September 2014, **LERNER** and others agreed to (a) defraud Bankrate's shareholders and the investing public, and (b) mislead Bankrate's independent auditors and regulators, by making and causing others to make false and misleading statements about Bankrate's financial condition.

### Manipulation of Bankrate's Expense Accruals

10.   **LERNER** and his co-conspirators maintained a spreadsheet that documented and tracked unnecessary and unsupported expense accruals, which they used to manipulate Bankrate's

4

financial statements. The spreadsheet – which **LERNER** and his co-conspirators referred to as "cushion" – contained hundreds of thousands of dollars of purported expense accruals for which there was no justification or support. Rather than reduce Bankrate's improperly recorded expense accruals immediately, **LERNER** and his co-conspirators would selectively reverse hundreds of thousands of dollars in expense accruals in later quarters as a means of controlling and inflating Bankrate's earnings and financial performance.

<u>Manipulation of Bankrate's Publicly Reported Adjusted Earnings</u>

11. Bankrate represented to the investing public that when it reported Adjusted EBITDA and Adjusted EPS, these figures were only adjusted by excluding certain expenses, which Bankrate identified as "stock based compensation expense, offering and deal related expenses and amortization expense." However, in contrast to what Bankrate was reporting publicly, **LERNER** and his co-conspirators manipulated Bankrate's Adjusted EPS and Adjusted EBITDA figures by directing Bankrate's finance department to improperly book routine fees and expenses as "deal related expenses" or "deal costs." By intentionally adding routine expenses to the "deal costs" account, **LERNER** and his co-conspirators caused more expenses to be excluded from Bankrate's publicly reported adjusted earnings figures than were disclosed to investors, and caused Bankrate's publicly reported Adjusted EPS and Adjusted EBITDA to be fraudulently inflated.

<u>Manipulation of Bankrate's Financial Statements Through Improper Expense and Revenue Adjustments</u>

12. Throughout 2011 and 2012, **LERNER** and his co-conspirators manipulated Bankrate's financial statements by making a series of false and misleading entries and adjustments to Bankrate's revenue and expense accounts. Often these entries were made by **LERNER** and his co-conspirators as Bankrate was in the midst of preparing its quarterly financial statements, and for the purpose of hitting a revenue or earnings target.

5

<u>Concealing False and Misleading Entries from Accounting Firm A</u>

13.    **LERNER** and his co-conspirators concealed the false and misleading entries they had made and caused to be made from Accounting Firm A and others.

### Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, the following overt acts, among others:

1.    On or about February 6, 2012, **LERNER** sent a Bankrate employee in the finance department an email with the subject "[first name of co-conspirator]'s Cushion – Save this Email – Don't Share this with Anyone," and attaching a spreadsheet itemizing the "cushion."

2.    On or about May 14, 2012, **LERNER** signed Bankrate's management representation letter to Accounting Firm A in which he falsely and fraudulently represented that **LERNER** had "made available [to Accounting Firm A] all…[f]inancial records and related data[,]" that he was not aware "of any information indicating that an illegal act, or violations or possible violations of any regulations, ha[d] or may have occurred, whether or not perceived to have a material effect on the interim financial statements[,]" and that he had "no knowledge of fraud or suspected fraud affecting the Company involving… Management[.]"

3.    On or about August 13, 2012, **LERNER** signed Bankrate's management representation letter to Accounting Firm A in which he falsely and fraudulently represented that **LERNER** had "made available [to Accounting Firm A] all…[f]inancial records and related data[,]" that he was not aware "of any information indicating that an illegal act, or violations or possible violations of any regulations, ha[d] or may have occurred, whether or not perceived to

have a material effect on the interim financial statements[,]" and that he had "no knowledge of fraud or suspected fraud affecting the Company involving... Management[.]"

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Superseding Information are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **HYUNJIN LERNER**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Superseding Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such violation.

### Substitute Assets Provision

3. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

  1) cannot be located upon the exercise of due diligence;

  2) has been transferred or sold to, or deposited with, a third party;

  3) has been placed beyond the jurisdiction of the Court;

  4) has been substantially diminished in value;

  5) or has been commingled with other property which cannot be subdivided without difficulty;

7

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), made applicable by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the provisions of Title 21, United States Code, Section 853, made applicable by Title 28, United States Code, Section 2461(c).

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

SANDRA MOSER, ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION

By: HENRY P. VAN DYCK
ASSISTANT CHIEF
EMILY SCRUGGS, TRIAL ATTORNEY
JASON COVERT, TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U. S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. | 17-CR-20235-MOORE(s) |
|---|---|---|

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

HYUNJIN LERNER,

     **Defendant.**
_____/

**Superseding Case Information:**

| | | |
|---|---|---|
| New Defendant(s) | Yes _____ | No __X__ |
| Number of New Defendants | 0 | |
| Total number of counts | 1 | |

**Court Division:** (Select One)

__X__ Miami    ____ Key West
____ FTL    ____ WPB    ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | X | Petty | | |
   | II | 6 to 10 days | ___ | Minor | | |
   | II | 11 to 20 days | ___ | Misdem. | | |
   | IV | 21 to 60 days | ___ | Felony | X | |
   | V: | 61 days and over | ___ | | | |

6. Has this case been previously filed in this District Court? (Yes or No)    Yes
   If yes:
   Judge: _____Moore_____    Case No. _17-CR-20235_
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No.
   Related Miscellaneous numbers:
   Defendant(s) in federal custody as of
   Defendant(s) in state custody as of
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    ___ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    ___ Yes   _X_ No

                   _____
                   HENRY P. VAN DYCK
                   DOJ ASSISTANT CHIEF
                   Court No. A5501507

\*Penalty Sheet(s) attached                          REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     HYUNJIN LERNER

**Case No:**     17-20235-CR-Moore(s)

Count #:  1

Title 18, United States Code, Section 371

Conspiracy to Make False Statements to a Public Company's Accountants, to Falsify a Public Company's Books and Records, and to Commit Securities Fraud

**\*Max Penalty:**    Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  17-CR-20235-MOORE(s) |
| | ) | |
| Hyunjin Lerner, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**LAWRENCE IASON**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*